**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**MICROSTRATEGY, INC.,**

      **Plaintiff,**

**v.**                                        **Civil Action No. 2:01cv826**

**BUSINESS OBJECTS, S.A., et al.,**

      **Defendants.**

**ORDER and OPINION**

_____Pending before the court is the motion of the defendants, Business Objects, S.A. and Business Objects Americas, Inc., (collectively "Business Objects")[1], to dissolve the injunction entered by the court on August 6, 2004 that presently enjoins Business Objects from using, disclosing or possessing certain trade secrets of the plaintiff, MicroStrategy, Inc. ("MicroStrategy"). On April 21, 2005, the court held a hearing on this motion. For the reasons stated herein, the court **DENIES** the defendant's motion to dissolve.

I. Background and Procedural History

The history of the underlying litigation between the two parties is lengthy and has been fully detailed by the court in prior orders. See e.g., MicroStrategy, Inc. v. Business Objects, S.A., 331 F. Supp. 2d 396, 400 (E.D. Va. 2004). An extensive review of this history is not necessary for the purposes of addressing the instant motion. In brief encapsulation, among the numerous

---

[1]As the court has done in other orders in this matter, for the purposes of this order and opinion, the court hereafter refers to the defendants as "Business Objects" and does so in the singular form. In other words, the court will refer to Business Objects as the defendant.

claims alleged by MicroStrategy against Business Objects at the onset of this litigation was that

the latter had misappropriated the trade secrets of the former, in violation of the Virginia

Uniform Trade Secrets Act.  See Va. Code. Ann. 59.1-336 et seq.

The misappropriation of trade secrets claim was tried before the court in October of 2003.

On August 6, 2004, the court issued its Findings of Facts and Conclusions of Law ("the August

6, 2004 order").  The court determined that Business Objects had misappropriated two of the

many documents claimed by MicroStrategy to constitute trade secrets, specifically, the

documents referred to as the "Business Objects Competitive Recipe" and the "Volume Discount

Schedule."  See MicroStrategy, 331 F. Supp. 2d at 422, 424.  As a remedy, the court granted

MicroStrategy's request for an injunction, narrowly tailored to prohibiting Business Objects from

possessing, disclosing, or using either of the two documents.

In discussing the necessary scope of injunctive relief, the court recognized in the August

6, 2004 order that the two documents in question might no longer constitute trade secrets due to

their age.  See id. at 431.  Beyond making this observation, however, the court expressed no

affirmative opinion as to whether the two documents currently constituted trade secrets.  Rather,

the court noted that the Virginia Uniform Trade Secrets Act permits a defendant to petition the

court to dissolve the injunction when the information has lost trade secret status.  See id.; Va.

Code. Ann. § 59.1-337.  Indeed, the VUTSA specifies that an injunction shall terminate when the

trade secret ceases to exist.   As the court also recognized in the August 6, 2004 order, however,

section 59.1-337 also permits the court to extend the injunction for a reasonable period of time in

order to eliminate any commercial advantage derived from the misappropriation.  See Va. Code.

Ann. § 59.1-337.  Consequently, in the August 6, 2004 order, the court issued a permanent

2

injunction but advised Business Objects that it could, at the end of a six-month period, petition

the court to dissolve the injunction on the basis that the documents in question no longer

constitute trade secrets.

On September 3, 2003, MicroStrategy filed a Notice of Appeal of the August 6, 2004

order to the United States Court of Appeals for the Federal Circuit.  Significantly, the Notice of

Appeal did not encompass the portion of the August 6, 2004 order that granted the injunctive

relief.  Rather, MicroStrategy appealed those portions of the August 6, 2004 order, as well as

prior interlocutory orders, that were adverse to the plaintiff.   Business Objects did not appeal any

portion of the August 6, 2004 order.

On February 17, 2005, Business Objects filed the instant motion along with a supporting

memorandum of points and authorities.  Following a granted extension of time, MicroStrategy

filed its opposition memorandum on March 3, 2005.  Business Objects then filed its reply

memorandum on March 8, 2005.

In a manner that has become all to common throughout the course of this litigation, the

issues presented in the instant motion have been somewhat further complicated by a number of

late pleadings filed by MicroStrategy and responses by Business Objects.  On April 14, 2005,

MicroStrategy filed a request for leave to file the declaration of Nicholas Lim, in further

opposition to the defendant's motion.  This request was docketed; however, the attached

proposed declaration of Mr. Lim was not.  The court observes that the proposed declaration

contains a faxed signature page that lacks Mr. Lim's original signature.

On April 15, 2005, Business Objects filed a response objecting to the introduction of Mr.

Lim's declaration.  Business Objects claims that this declaration is untimely and that

MicroStrategy provided no justification for why Mr. Lim's declaration could not have been filed with MicroStrategy's initial opposition memorandum to the motion to dissolve.

Also on April 15, 2005, MicroStrategy filed a supplemental memorandum in further opposition to the motion to dissolve, claiming that the court lacks jurisdiction to hear this motion as this case is currently on appeal.  MicroStrategy did not seek leave of the court to file this motion, and it has not been docketed.  On April 18, 2005, Business Objects filed its response to this supplemental memorandum.  This response has also not been docketed.

## II. Discussion

Business Objects contends that the injunctive relief provided by the August 6, 2004 order should be terminated because the Business Objects Competitive Recipe and the Volume Discount Schedule can no longer be viewed trade secrets.  Business Objects claims that the information in both of these documents is now stale, such that neither document has any economic value.  Furthermore, Business Objects argues that to the extent the information in such documents may have passed into the public domain, Business Objects should not be subject to contempt if it should come into possession of this information.  Business Objects also claims that it would be unfairly penalized if it was prohibited from obtaining what would amount to legitimate business intelligence to which the public now has access.

MicroStrategy responds that the circumstances surrounding the issuance of the injunction have not changed.  Furthermore, MicroStrategy claims that Business Objects' position that the information in the protected documents is without value is inconsistent with its claim that continuing to comply with the injunction will cause a hardship on Business Objects.

A. Subject Matter Jurisdiction

As a threshold matter, MicroStrategy has raised an objection to the court's jurisdiction to entertain this motion.  Business Objects responded at the hearing that the jurisdictional issue should have been raised in a more timely fashion.  Although Business Objects' response and objection on timeliness grounds is well taken from a convenience standpoint, the court recognizes that the question of subject matter jurisdiction may be raised at any point during the proceedings and, accordingly, the court must first address this issue.  See Brickwood Contractors, Inc. v. Datanet Eng'd, Inc., 369 F.3d 385, 390 (4th Cir. 2004).  In doing so, the court will direct the Clerk's Office to file the memoranda of the parties in regards to the question of the court's subject matter jurisdiction.

MicroStrategy claims that as this matter is on appeal to the United States Court of Appeals for the Federal Circuit, this court lacks subject matter jurisdiction over the instant motion to dissolve the injunction.  MicroStrategy is correct that in general, "an appeal divests a trial court of jurisdiction over 'those aspects of the case involved in the appeal.'" Fobian v. Storage Tech. Computer, 164 F.3d 887, 890 (4th Cir. 1999) (quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56. 58 (1982)).  MicroStrategy contends that the present injunction is an integral part of the judgment now before the Federal Circuit.  For example, MicroStrategy claims that if this court's prior exclusion of certain expert reports should be reversed and the case remanded so that a jury can consider all of MicroStrategy's business tort claims, including theft of trade secrets, a determination by this court that the Business Objects Competitive Recipe and Volume Discount Schedule do not constitute trade secrets would conflict with a determination by the Federal Circuit that a jury should have determined this issue

in the first instance.

MicroStrategy does acknowledge that the Fourth Circuit, in <u>Fobian  v. Storage Tech.</u> <u>Computer</u>, 164 F.3d 887, 890 (4th Cir. 1999), recognized a limited number of exceptions to the general rule prohibiting a district court from addressing a matter on appeal, including a Rule 60(b) motion.  Based on the guidance in <u>Fobian</u>, however, MicroStrategy asserts that this court may consider and deny Business Objects' motion, but it does not have jurisdiction to grant it. <u>See</u> <u>id.</u>  As MicroStrategy concedes that the court has jurisdiction to rule on a Rule 60(b) motion when the effect of that ruling is a denial of the motion, the denial of the instant motion would seem to circumvent any jurisdictional issue.  <u>See</u> <u>id.</u>  As it is possible, however, that Business Objects will renew its motion to dissolve at some time prior to any ruling from the Federal Circuit, the court explains why jurisdiction over this motion is proper even if the court were inclined to grant it.

In its filed response, Business Objects refutes the jurisdictional objection by recognizing that the divestiture of jurisdiction only concerns those aspects of the case involved in the appeal. Business Objects rightly contends that the present issue of the equitable relief afforded to MicroStrategy via the injunction is not the subject of MicroStrategy's appeal.  Business Objects maintains that even if the Federal Circuit determined that MicroStrategy's business tort claims should have been determined by a jury, a jury would not determine the issue before the court - whether continuing injunctive relief is warranted based on whether the documents continue to constitute trade secrets.

The court agrees with the position of the defendant that jurisdiction over the instant motion exists without regard to the status of the pending appeal because the question of the

injunctive relief ordered by the court is not on appeal before the Federal Circuit.  As Judge Payne noted in Crutchfield v. United States Army Corps of Eng'rs, 230 F. Supp. 2d 673, 679 (E.D. Va. 2002), the purpose of the rule articulated by the Fourth Circuit in Fobian is "to prevent a trial court and an appellate court from considering the same issues simultaneously."  Crutchfield, 230 F. Supp. 2d at 679. "[T]he rule only applies to prevent the trial court from taking actions that might duplicate or confuse issues before the appellate court."  Id.

Such overlapping review is certainly not an issue in the court's consideration of the instant motion.  The Rule 60(b)(5) motion filed by Business Objects does not duplicate an appeal.  It merely asks that the court find that it is no longer equitable to enforce the injunction based on changed circumstances.  A finding by the court that the injunction should terminate based on a finding that the Business Objects Competitive Recipe and the Volume Discount Schedule are no longer trade secrets does not complicate issues before the Federal Circuit as the question of the appropriateness of injunctive relief is not on appeal.

At the hearing on the instant motion, counsel for MicroStrategy framed the issue as whether the court has jurisdiction to rule on a Rule 60(b) motion and, more specifically, to dissolve the injunction as Business Objects requests.  In Fobian, the Fourth Circuit recognized that Rule 60(b) motions are properly brought and considered in the district court, even when the matter is on appeal.  See Fobian v. Storage Tech. Corp., 164 F.3d 887, 890 (4th Cir. 1999).  As MicroStrategy references, the court in Fobian did recognize a conflict were the district court to grant a Rule 60(b) motion when the effect of such ruling would in essence do away with the appeal.  If the court granted a Rule 60(b) motion that vacated the underlying judgment and reopened the record, such action would conflict with the prohibition against dual exercise of

7

jurisdiction "in a way that does not emerge when the district court denies a Rule 60(b) motion." See id.

These concerns, however, are simply not present in the context of the instant motion. Were the court to grant Business Objects' motion to dissolve the injunction, the court would not be vacating the underlying judgment that resulted in the need for the injunction in the first instance. The court would be considering the proper limits of the injunction in operating prospectively, not reviewing the merits of any prior decisions that are now on appeal. The Supreme Court has recognized that the issuing court retains jurisdiction to modify or dissolve an injunction. See System Fed'n No. 91, Ry. Employees Dept. v. Wright, 364 U.S. 642, 647 (1961). Even if the Federal Circuit did determine a jury should have determined the trade secrets issues, it is the province of the court in this case to determine injunctive relief. See Va. Code Ann. § 59.1-337. Furthermore, the Virginia statute that authorizes such relief also contemplates that the trial court will determine when such relief should cease. See id.

In this case, the Rule 60(b) motion does not substitute for an appeal, both because the injunction has not been appealed and because the requested relief would not impede the Federal Circuit's consideration of the issues on appeal. Accordingly, in ruling on the instant motion as well as any other motions to dissolve the injunction that may follow, the court finds that it may consider, deny or grant a motion to dissolve the injunctive relief.

B. Declaration of Nicolas Lim

Prior to addressing the merits of the motion to dissolve, the court must also consider MicroStrategy's request to file the declaration of Nicolas Lim. MicroStrategy submitted the declaration of Mr. Lim in response to what it considered to be Business Objects' attempt to shift

8

the burden of proof on this motion to MicroStrategy.  In reviewing the pleadings, the court understands how MicroStrategy came away with this view.  In its memorandum in support of the instant  motion, Business Objects claims that the Business Objects Competitive Recipe and the Volume Discount Schedule no longer constitute trade secrets.  MicroStrategy responds in opposition that Business Objects fails to establish that the documents are no longer trade secrets. In its reply brief, Business Objects contends that MicroStrategy has failed to produce any evidence that the information contained in the documents continue to constitute a trade secret. Thus, in the wake of MicroStrategy's opposition, Business Objects does appear to attempt to shift the burden of establishing trade secret status to MicroStrategy.

In response to Business Objects' suggestion that it is MicroStrategy that has the burden of establishing continued trade secret status, MicroStrategy has requested leave to file the declaration of Nicolas Lim, MicroStrategy's Director of Market Intelligence, in order to eliminate any doubt as to the evidentiary basis for MicroStrategy's contentions in its opposition memorandum that the documents still constitute trade secrets.  MicroStrategy maintains that this declaration is submitted solely in response to suggestions by Business Objects in its reply brief that a more formal evidentiary basis is necessary to support MicroStrategy's positions.

The declaration provides some technical reasons why the documents in question still constitute trade secrets and largely supports the positions taken in MicroStrategy's opposition memorandum.  As Business Objects claims, however, it is untimely, submitted nearly six weeks after MicroStrategy filed its opposition memorandum.  Moreover, there is no original signature for Mr. Lim.  Finally, the court believes that the declaration is unnecessary in light of the court's determination, as explained further herein, that Business Objects has the burden of showing that

9

the documents in question no longer constitute trade secrets.

MicroStrategy admitted during the hearing that the declaration of Mr. Lim was not necessary in order for the court to find in its favor and offered no justifiable reason for why the declaration was not filed in a more timely manner.  While the court, in reviewing the memoranda submitted by Business Objects, understands why MicroStrategy believed it had to respond to Business Objects' contention that MicroStrategy had failed to produce evidence supporting continued trade secret status, this does not excuse the untimely manner in which the declaration was filed.  Accordingly, the court will deny the plaintiff's request for leave to file Mr. Lim's declaration.

C. Motion to Dissolve the Injunction

Federal Rule of 60(b)(5), upon which Business Objects relies in support of the instant motion, provides "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged . . . or it is no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5).  In order to grant a Rule 60(b)(5) motion to modify a prior order, the court must find "a significant change either in factual conditions or in law."  Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384 (1992).

The court ordered the injunction in reliance on Virginia law.  See Va. Code. Ann. § 59.1-337.  A permanent injunction is a creature of equity designed to enforce substantive law rights. 7 Moore's Federal Practice, Pt. 2, para. 65.18[1].  "In this sense the availability of injunctive relief is an integral component of the substantive law right.  Where federal courts are called upon

to adjudicate a claim predicated on state law . . . the ultimate issue of whether injunctive relief may issue must be decided under applicable state law." Sullivan v. Vallejo City Unified Sch. Dist., 731 F. Supp. 947, 956 (E.D. Ca. 1990).

Business Objects seeks termination of the injunction pursuant to a federal rule.  Under the Erie doctrine, the court applies federal law to procedural matters and state law to substantive matters.  See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).  Although the decision to grant the injunction was rooted in state law, the court is free to follow the procedures stemming from the federal rules in determining this motion to dissolve, even though a similar method of analysis for dealing with motions to dissolve is not readily apparent under the state scheme.  See Hanna v. Plumer, 380 U.S. 460, 473 (1965); New York v. Operation Rescue National, 1994 U.S. Dist. Lexis 485, at *4 (S.D.N.Y. Jan. 21, 1994) (noting that even if plaintiff's state law claims provided sole basis for injunction, federal law authorizes manner in which disregard of injunction may be sanctioned).

The parties agree that the governing federal standard in reviewing a motion to dissolve focuses on six factors:

> (1) the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented;
> (2) the length of time since entry of the injunction;
> (3) whether the party subject to its terms has complied or attempted to comply in good faith with the injunction;
> (4) the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction;
> (5) whether the moving party can demonstrate a significant, unforeseen change in the facts or law and whether such changed circumstances have made compliance substantially more onerous or have made the decree unworkable; and
> (6) whether the objective of the decree has been achieved and whether continued enforcement would be detrimental to the public interest.

Crutchfield v. United States Army Corps of Eng'rs, 175 F. Supp. 2d 835, 844 (E.D. Va. 2001).

In applying this framework, which is linked to Federal Rule of Civil Procedure 60(b), the court

also considers the substantive state law that authorized this injunction - specifically, Virginia

Code section 59.1-337.  This statute provides that an injunction shall terminate, upon application

to the court, when the trade secret has ceased to exist.  Va. Code. Ann. § 59.1-337.  Even if the

trade secret has ceased to exist, however, the court may continue the injunction for an additional

reasonable period of time in order to eliminate the commercial advantage that otherwise would

be derived from the misappropriation.  See id.

From the above standards of review, provided in the caselaw interpretation of the reach of

Rule 60(b)(5) and on the face of the state statute, two factors stand out.  One, in both state and

federal schemes it is clear that it is the defendant's burden to show changed circumstances, which

in this case requires a showing that the documents are no longer trade secrets.  Second, the court

can continue the injunction on one of two findings: (1) that the documents still constitute trade

secrets; and (2) even if the documents are not trade secrets, if the court finds that a reasonable

period of time is needed to eliminate commercial advantage that has accrued to the defendant as

a result of its possession of such documents.  See Va. Code Ann. § 59.1-337.

Although the court did recognize in its August 6, 2004 order that the Business Objects

Competitive Recipe and Volume Discount Schedule might no longer constitute trade secrets, it

determined that injunctive relief was appropriate without definitively deciding whether trade

secret status still existed.  The reason for this was that Virginia Code section 59.1-337, which

authorizes injunctive relief, also provides that even when trade secret status ceases, such that the

injunction shall terminate, an injunction may be continued for "an additional reasonable period of

time in order to eliminate commercial advantage." Va. Code. Ann. § 59.1-337.  Thus, injunctive relief was permitted under section 59.1-337 regardless of whether the documents still constituted trade secrets at the time of the August 6, 2004 order.

The court, however, also followed the provision of section 59.1-337 that provides that the party enjoined should make application to the court for a dissolution of the injunction based on the loss of trade secret status.  In keeping with this provision, the court, in its August 6, 2004 order, placed the burden on Business Objects to show that the documents at issue no longer constitute trade secrets. Accordingly, in the posture of the instant motion to dissolve the injunction and considering the aforementioned standards of review, the court must assume that the documents at issue continue to be trade secrets and that it is Business Objects' burden to prove otherwise.  This inquiry into whether Business Objects has established changed circumstances is, of course, different than the court's initial inquiry as to whether the Business Objects Competitive Recipe and the Volume Discount Schedule constituted trade secrets at the time of misappropriation.

Although it is not readily apparent throughout Business Objects' memoranda that it acknowledges this burden of showing changed circumstances, counsel for Business Objects conceded at the hearing that it bore the burden on this motion to dissolve the injunction.  Both at the hearing and throughout its pleadings, Business Objects places undue emphasis on the observations made by the court in the August 6, 2004 order that the documents in question might no longer constitute trade secrets.  Such observations did not constitute findings by the court and do not dislodge the burden of Business Objects to establish that the documents in question have ceased to have trade secret status.

13

1. Virginia Code Section 59.1-337

In establishing that the documents no longer constitute trade secrets, Business Objects must put forward an evidentiary basis sufficient for the court to find that the documents (1) no longer have economic value; and (2) are no longer the subject of efforts that are reasonable under the circumstances to maintain their secrecy.  See Pierre Dionne v. Southeast Foam Converting & Packaging, Inc., 240 Va. 297, 302 (1990).

The court finds that Business Objects has failed to make such a showing.  There is no evidence, beyond argument based on the age of the documents, that these documents have lost economic value.  Although Business Objects argues that the Business Objects Competitive Recipe is tied to outdated products, there is no showing the analysis and information that went into developing the Business Objects Competitive Recipe was or is exclusively tied to the products available at the time that document was authored.  Furthermore, Business Objects has not shown that MicroStrategy no longer relies on either document in either competing against Business Objects or in offering discounts to customers.

At the hearing on this matter, Business Objects presented no evidence or testimony in support of its contention that the documents at issue have become publicly available.  While it is no doubt true that a large amount of confidential information makes its way into the public domain eventually, Business Objects' generalized contention does not support a determination that either the Business Objects Competitive Recipe or the Volume Discount Schedule have been so publicized.  Business Objects has introduced no evidence from shared customers or other competitors that tends to reveal that the Business Objects Competitive Recipe or the Volume Discount Schedule have been disseminated in the industry in any fashion.

14

Moreover, Business Objects has not shown that either document is no longer the subject of efforts by MicroStrategy to retain its confidential status.  The Virginia Supreme Court has recognized that "[t]he characteristic of a trade secret is secrecy rather than novelty."  Id.  There has been no showing that MicroStrategy has allowed these documents to become public or failed to take other steps to secure them.  Accordingly, Business Objects has not established that the injunction should cease to exist based on a loss of trade secret status.

      2. Rule 60(b)(5)

      Application of the general framework that governs a Rule 60(b)(5) motion to dissolve an injunction also support the denial of the instant motion.  "When confronted with any motion invoking [Rule 60(b)(5)], a district court's task is to determine whether it remains equitable for the judgment at issue to apply prospectively and, if not, to relieve the parties of some or all of the burdens of that judgment on such terms as are just."  Alexander v. Britt, 89 F.3d 194, 197 (4th Cir. 1996).  In looking to the factors identified in Crutchfield, which both parties agree are applicable to the instant motion, it is apparent that the required showing for dissolution has not been made.  See Crutchfield, 175 F. Supp. 2d at 844.

a. Circumstances of Injunction and Nature of Conduct

The circumstances leading to the entry of the injunction and the nature of the conduct sought to be prevented are set forth in the August 6, 2004 order and need not be repeated.  The harm the court sought to prevent in its prior order was the improper advantage Business Objects gained and would continue to gain commercially through its improper possession and use of MicroStrategy's confidential trade secrets.  Business Objects possessed these documents for nearly three years prior to the imposition of the injunction.

b. Length of Time Since Entry of the Injunction

Business Objects claims that, considering the outdated nature of the documents, a significant period of time has passed since the entry of the injunction.  The mere passage of time, however, is not a sufficient reason to terminate an injunction.  See SEC v. Coldicutt, 258 F.3d 939, 941 (9th Cir. 2001).  The Supreme Court of Virginia has indicated that "[t]he crucial characteristic of a trade secret is secrecy rather than novelty."  Pierre Dionne, 240 Va. at 302. Thus, Business Objects must not only show that the documents are old, but that they are no longer kept secret.  The relatively brief duration of the injunction does not allow for such a finding and, thus, does not warrant dissolution at this time.  See Crutchfield, 175 F. Supp. 2d at 845.  Given the nearly three years that Business Objects was in possession of the documents, the court does not find that the nine months that have passed since the entry of the injunction supports a showing of dramatic change in the circumstances underlying its issuance.  See id. (citing Fed. R. Civ. P. 60(b)(5)).

This is not to suggest that the age of the documents is not relevant to the question of changed circumstances.  In view, however, of the fact that Business Objects has not established that the documents no longer constitute trade secrets, the court does not believe that nine months is a sufficient amount of time to undercut any commercial advantage that Business Objects may have gained through their three year possession and use of the documents.  See Va. Code. Ann. § 59.1-337.

c. Business Objects' Compliance with the Injunction

Business Objects also claims that it has fully complied with the terms of the injunction. In the court's view, this merits little consideration as compliance is what the law expects.

Coldicutt, 258 F.3d at 941.  Furthermore, the time of compliance is too brief to warrant dissolution when balanced against the time that Business Objects possessed the documents.

d. Likelihood of Repeat of Conduct that Prompted Injunction

Although there is no indication that the misappropriation will reoccur absent the injunction, or that Business Objects will somehow again obtain the documents at issue, the court is not convinced that a sufficient period of time has passed in order to eliminate any commercial advantage Business Objects might have obtained through its possession or use of the documents. See Va. Code. Ann. § 59.1-337.

e. Significant Change in Facts or Law That Have Made Compliance Difficult

As has been discussed, Business Objects has not demonstrated that any significant, unforseen change of fact or law has occurred that would make compliance with the injunction more difficult.  See Crutchfield, 175 F. Supp. 2d at 847.  There has been no showing, other than reliance on the passage of time and certain nonspecific MicroStrategy releases, that the documents have lost significant economic value or have entered into the public domain in the past nine months since the court issued the injunction.  Nor has Business Objects demonstrated that it is any more difficult for it to comply with the injunction.  In fact, Business Objects admits in its memoranda, and also did so at the hearing, that it is not interested in reacquiring the documents at issue.

Although Business Objects, in the course of its memoranda, makes repeated references that there is a possibility that it might inadvertently reacquire the documents, it has not made any evidentiary showing to support this conjecture.  Nor has it shown that it has taken any efforts to avoid inadvertent reacquisition that would make compliance more costly or difficult.  The court,

17

in fact, rejected MicroStrategy's initial request for a broader injunction and crafted one limited solely to the two documents at issue.  Therefore, continued compliance is not difficult.

f. Objectives of the Injunction and the Public Interest

Business Objects argues that the injunction has served its purpose and that it is no longer in the public interest to prevent Business Objects from obtaining what might be legitimate competitive intelligence.  This latter argument, that Business Objects should not be deprived from using intelligence that is available to any other competitor, is at odds with Business Objects' repeated contention that the documents at issue are stale and without value.

The purposes of the injunction were twofold: (1) to prevent Business Objects from possessing, using and disclosing the described misappropriated trade secrets, and (2) to eliminate any commercial advantage Business Objects may have obtained through its possession and use of the documents.  Based on the foregoing discussion, the court cannot find that the injunction has run its course because Business Objects has failed to demonstrate that the Business Objects Competitive Recipe and the Volume Discount Schedule are no longer trade secrets.  Even were the court to rely on the largely speculative assertions made by Business Objects in support of its motion to dissolve and find that the trade secrets have ceased to exist, the court is not convinced that enough time has passed to completely eliminate the commercial advantage Business Objects obtained by having these documents.  See Va. Code. Ann. § 59.1-337.

The court finds that there is certainly a significant public interest in maintaining the confidentiality of trade secrets and preventing their misappropriation.  Business Objects argues, however, that competition in the software industry thrives on the free flow of information and is stymied when outdated documents are given trade secret protection.  Once again, this argument is

18

in tension with Business Objects' claims that the documents are too stale to constitute trade secrets.

Moreover, in the course of the hearing, it became apparent that Business Objects' motivation to dissolve the injunction stems, at least in part, from its concern over a negative market perception that this injunction has created. Business Objects claims that MicroStrategy, in its advertising, has taken advantage of the fact that its competitor is subject to an injunction. As a result, Business Objects contends that it operates under a cloud of impropriety that is no longer justifiable. While such considerations certainly have their place in the commercial market in which both Business Objects and MicroStrategy operate, they relate more to Business Objects' own interests than to those of the public. As such, the court cannot find that continued enforcement would be in any way detrimental to the public interest. See Crutchfield, 175 F.2d at 849.

### III. Conclusion

The court does not anticipate that this injunction will exist permanently into perpetuity. A reading of section 59.1-337 makes clear that the objectives of an injunction covering trade secrets will be met when both the trade secrets cease to exist and any residual commercial advantage is eliminated. See Va. Code Ann. § 59.1-337. As the court suggested in the August 6, 2004 order, at some point the documents at issue cease to be economically valuable or become publicly available and, thus, cease to be trade secrets. See id. Both section 59.1-337 and the caselaw interpreting the reach of Rule 60(b)(5) indicate that it is Business Objects' burden to make these showings.

The court concludes that Business Objects has failed to do so. Although Business

Objects has produced some evidence that pertains to economic value, it largely relies on argument concerning the age and staleness of the documents in the fast moving software market. In the absence of other evidence and considering the fact that the injunction has only been in place for nine months, the court cannot find either that the documents have ceased to be trade secrets or that any commercial advantage has dissipated such that the injunction should be lifted at this time.

Again, the court does not wish to leave the impression that the passage of time is irrelevant to the trade secret status of the documents at issue.  The defendant, however, has presented the court with too brief a period of time that, standing alone and unsupported by other evidence, does not support dissolution of the injunction.  Considering the totality of the circumstances and exercising its equity powers, the court determines that the injunction should be kept in place for a minimum of nine (9) months from the date of this order.  At the conclusion of this period, Business Objects may again petition the court to dissolve the injunction on the basis that the documents are no longer trade secrets and that any commercial advantage has been eliminated.  See Va. Code. Ann. § 59.1-337.

Accordingly, the defendant's motion to dissolve the injunction is **DENIED**. Additionally, the plaintiff's request to file the declaration of Nicolas Lim is **DENIED**.  As set forth and in the manner described in the August 6, 2004 order, the defendant remains enjoined from possessing, disclosing or using the Business Objects Competitive Recipe and the Volume Discount Schedule.

The Clerk is **DIRECTED** to file and docket MicroStrategy's supplemental memorandum in further opposition to Business Objects' motion to dissolve the injunction, received on April

15, 2005, and Business Objects' response that relates to this supplemental memorandum, which

was received on April 18, 2005.

Additionally, the Clerk is **REQUESTED** to send a copy of this Order to counsel of

record.

It is so **ORDERED.**


_____ /s/

Jerome B. Friedman

UNITED STATES DISTRICT JUDGE

May <u>10th</u>, 2005

Norfolk, Virginia